Good morning and thank you, Your Honor. May it please the Court, Stephen Gombos for Grand Canyon University. I'd like to reserve three minutes of rebuttal with the permission of the Court. There are good reasons to doubt Congress authorized the Department of Education to decide non-profit status. But to the extent it did, Congress only authorized the Department to look at private inurement. That makes sense. The core defining feature of a non-profit institution as opposed to a for-profit institution is private inurement. GCU complies with the restriction and the Department has not argued otherwise. In fact, in the briefing of this case, it's fairly stipulated there's no finding of private inurement. So the regulation is wrong in cross-referencing whether or not the IRS has designated the entity as a non-profit for purposes of 501c3? No, I don't think it's wrong, Your Honor. You could argue that the express language of the statute does not allow the Department to analyze the operational test that's referred to in subsection 3 of 600.2. But what the regulation says, and it does not help my adversary, is that if you're recognized as a 501c3 by the IRS, you satisfy that prong. Likewise, with regard to subsection 2, if you satisfy the state requirement, in this case Arizona, which merely says you have to organize for a lawful purpose, you satisfy that requirement. I do not believe that regulation says in its plain meaning that the Department is going to decide private inurement in addition to the IRS, which is, in effect, what it would say if they reserved that right. And more importantly in the foundational argument we have today is that the Higher Education Act in 20 U.S.C. 1003 subsection 13, they're limited to determining private inurement. Congress knew the 501c3 test, and had it intended for the Department to do that, it would have said so. We believe the cleanest way for the Court to resolve this case without getting to whether the Department, Your Honor, as your question raises, without getting to whether they were allowed to require IRS recognition, is simply to resolve it because there's been no finding of private inurement. It's what we argue below, and we think that controls. The Department denied GCU's nonprofit status because it did not agree it was operated exclusively for a tax-exempt purpose, going to the very heart of the 501c3 test. And if you look at the plain meaning of the higher – plain language of these eight higher educations borrowing, it adopted the private inurement test except for four words, which begs the question that you've asked, which is what do those words may not lawfully inure. We've subscribed meaning to that, Your Honor, below by saying that language stands for the proposition that if you are a recognized 501c3, your earnings can't lawfully inure to the benefit of another party. And we believe that that cabins this to not only to private inurement, but more so, says that if you're recognized as a 501c3, it's already – those extra words are in here that are not in the comparable language in 501c3? Your Honor, I – we have – to be candid, we haven't found a direct answer to that, but it is in the disjunctive, the fact that there's an or, or may not lawfully inure, we believe supports the argument that if you're a recognized 501c3 at the time of your application to the Department, the Department doesn't have to look behind it. Now, we know by action for decades the Department accepted that. If you are a recognized 501c3, the Department accepted that and moved on. The C change came in 2016, and the offensive problem with that is that no one has been advised what that meant. When they made the change, there was no guidance. As we stand here today, having received two decisions, it's a standard list process by which they go. The briefing in this case makes clear they have concerns, for example, about the 60 percent revenue share. But they've never said what an appropriate share is, and so you're devoid of any kind of standard or guidance as to how the agency was going to make that resolution. So I want to make sure I'm understanding your argument. From what you're saying, it seems that your position is if the IRS has made a decision under 501c3, then there is no work to be done under the Higher Education Act, because the answer to the 501c3 question answers the question under the Higher Education Act, Provision 1003. Is that your argument? Well, we made that argument below, Your Honor. In our briefing, though, we have given the court an opportunity to make this decision, and frankly to rule in our favor by saying if the Department found private underment, as it outlines in its first subsection of 600.2, we might have a problem. That hypothetical, though, Your Honor, Judge Forrest, is not existent here because the Department stipulated there's been no private underment, and private underment is distinguished from the operational test because it looks at whether an insider is getting net profit, and it hasn't in this case. So just to put a fine point on it, you would like us to say once the IRS has decided it, it's over. But in the alternative, you would, assuming the Department has the authority to determine its own interpretation of private underment or to apply it as it sees fit, you would say they just haven't done that properly here. Well, we wouldn't say they haven't done it improperly. What we would say is they stipulate. They agree there's been no private underment in this case. Your Honor, though, if you'll ---- Brecker, did they stipulate to that? Well, Your Honor, it's conceded in Plaintiff's brief at 6 and in various places in his brief, and the Department's decisions on their face don't even speak of private underment at all. They basically focus solely on the operational test, which derives from private underment. If you found that they had, as you're contending, applied the wrong standard, wouldn't we send it back to the agency to apply the correct standard? Well, Your Honor, you would in a normal case. But on this record, the Department has indicated there is no private underment. And indeed, you can see that from the briefing. In fact, if you look at the government's brief, the government's brief indicates there's no argument about private underment. We got here. The Department argues now that we failed the operation test, private benefit. And we ---- I'm not sure I read the briefing the same way, but so assume for the moment that what the Department just did was there's an absence of a finding of private underment. If it's just an absence of a finding of private underment, what is the appropriate course of action? The Court would have discretion to remand it, to have that considered. However, again, on this record, I don't believe there's any basis to conclude that there's private underment. There is absolutely no showing on the facts of this transaction that an insider was paid net profit in this circumstance. Indeed, two studies were commissioned to analyze this at fair market value, and the consideration flows to GCE in this case, for short, because it's providing services as a simple service provider. So there's no distribution to anyone. Very distinguished from cases like Church by Mail, where you have principals, insiders running the for-profit entity, providing the service, and deriving direct benefit from that service. This is highly distinguishable from there. Indeed, Church by Mail, while I'm on the subject, is a case in which the for-profit entity was created by the two members that controlled the nonprofit. That's nonexistent in this case. They provided no service. They simply contracted out with a third party and did a 15 percent markup on those services. Indeed, the Court accurately says the charitable entity could have contracted directly for the printing and mailing services that were provided. So there is private inurement there, and there's private benefit in that case. This case is highly distinguishable from that. So my answer to remand is there's nothing in the record that would warrant the remand. The agency would effectively be doing what it already had an opportunity to do, and it indicated there was no private inurement as we read their decisions. One thing I'd like to emphasize today is that GCE's independent board of trustees structured this transaction to ensure the university returned to nonprofit status on sound financial footing. And I think that's important given the way the transaction's been portrayed by the department and the government. That did three things. For example, GCU acquired assets valued at $1.2 billion for only $877 million. It entered an interest-only loan that allowed the university to establish sound financial footing during the early stages. And one thing I think is important when you look at a case like this, this charity was created, it was started based on the transaction. It was critical, and the independent board knew that, that it had all the services and that it was cash positive. And that's required by Title IV and is the very type of thing that the department should properly focus on. And GCU demonstrated actual performance by the time it received the decision in November of 19, some 16 months after the transaction, having not received any pre-acquisition review from the department. It met with the department. It showed them a PowerPoint. I believe in the record it's 2275. And if the court looks at that, it's a very thorough document. It shows solid financial success, $100 million plus in cash flow that went back to the university's charitable mission. And that's important as well. There is no argument in this case that the services provided by GCU are not exclusively to serve the charitable mission of GCU. They provide those services and the services 100% relate to that charitable mission. Now, having established a very successful financial stability and ability to reinvest in its students, the consequences of that were also shown in that 2275 PowerPoint that was given to the department. GCU students became more diverse because they were allowed to keep their tuition frozen for 12 straight years. As we sit here today, tuition has not been risen. And that's critical given what's going on in the country, student debt. GCU graduates, GCU students graduate with less student debt than most universities. And when you look at the tuition increases I referenced, that document shows that in the higher education sector, their increases are substantially below market. At a time when student debt is one of the major issues facing this country, GCU's transaction with GCE allowed them to tackle that issue head on. And it's benefited their students substantially throughout the process. Finally, throughout the process, the department shifted regulatory goalposts without explanation. What do I mean by that? Let me put that in practical terms since I'm fairly into my argument. The department in January after the initial decision, January of 20, wrote a letter to GCE after the meeting I referenced and the presentation of the success of this transaction, which is undisputed, by the way. One thing I would add, you see no discussion from the department in the second decision focusing on GCU's charitable purpose, GCU's reasons for entering the contract, and the consequences that I pointed out, some of which I pointed out to court, which are really fully briefed in our briefs. And why is that important? If you apply the IRS test, so if we assume they were allowed to apply the operational and purpose test, the major focus of that test is on the charitable entity, not the contractor. You look at the decisions from the department, particularly the second one, it's all focused on the contractor's benefit. And it's an unusual situation where the seller's forecast is used as a sword against the buyer that didn't even see that forecast before the transaction. Now, it was provided to the government and copied to counsel for GCU in that process. But my client, and it's well reflected in the record, was highly transparent with the department going back to 2014. They told the department they wanted to do this. They had positive interaction initially. They continued that process. They went to their accreditor. They went to the state, as they're supposed to, and they were completely transparent. They invited the department to come to the campus. They invited the department to interview people from Deloitte or BKD, and the department had that right. The department didn't exercise it. So when I say the regulatory goalposts were moved, my concern is that you're told after a meeting that you can go forward with your amended transaction, and I was involved in the amendment. I was counsel by that time. And you're told provide an updated transfer pricing study from Deloitte, get an independent expert to validate that, and submit the information with your proposal. It's done. Then you get the decision, and the decision says transfer pricing isn't the correct report, which is wrong. Transfer pricing was the correct report. It's the state-of-the-art document, if you will, for IRS purposes, when you're splitting services from an existing entity to two subsequent entities. And those reports unanimously confirm that these services are being provided at fair market value. The other thing the court should note at this point in my argument, hundreds of institutions of higher education participate in exactly these kind of arrangements. Most importantly, Purdue Global. I'm sorry, I don't mean to interrupt, but I did want to go back to your position that the department affirmatively found that there was not private endearment. If you can just point me to parts of the decision or the review decision where you think show an affirmative finding of a lack of private endearment. I don't have the brief references here at hand. And I guess to follow up on that, I'm curious about this same question, and it seems to me that what we need is a reference in the record, not in the briefing. Not in the briefing, correct. Well, I can't say the department's decisions say that they did not find private endearment. What I've argued, Judge Song, and I apologize for the delay and also not making this clearer when you asked me the first time, the decisions on their face make no reference to private endearment whatsoever. The briefing in this case, though, says the department agrees we satisfy two and three. The department agrees that there's no issue of private endearment. I believe that's in the government briefs, and I will give you those sites when I stand up here on rebuttal. But when you look at the analysis that the department did, it is limited purely to the operational test and charitable purpose test that the IRS applies under 501c3. And in terms of that argument, I'll make it very simple. That's my lead argument on the HEA. The Congress knew what 501c3 said, and it incorporated only the private endearment test. Had it intended to give the department the right to apply the operational and purpose test, it would have included that in the statute. It's in the same legislation from which they borrowed the private endearment test. So I don't think there's a basis for the department to argue that they have that right, and their regulation can't expand that right. There was an awkward discussion in the court below about that and making something in the regulation superfluous. Well, I think the analysis is backwards. If you begin with the statute and then you go to the regulation, if the department overreached in the regulation, that's a problem for the department. But the Congress told the department what they were allowed to do in this interest, and they chose not to include private endearment. There's also discussion. My understanding, though, is there's not a square challenge presented to the validity of the regulation, as far as I can tell from the arguments below and on appeal. I didn't see anything saying that the regulation itself is invalid. We have not made that argument, Your Honor. It's existed so long. I see I'm down to two minutes of my time. With the court's permission, I'll reserve that for the rebuttal. Thank you. Thank you, counsel. We'll hear now from Mr. Ross. Thank you, Your Honor. May it please the court, Kason Ross for the Department of Education. I think it's helpful to maybe take a step back and reorient this case a bit. After Plaintiff Grand Canyon University was sold and spun off by its former corporate owner, most of Plaintiff's revenues continued to flow to that corporation under the terms of a services agreement, under which most of Plaintiff's revenues, or Plaintiff is a captive client of that corporation for several years and potentially in perpetuity. Moreover, most of Plaintiff's executive leadership are employees of that corporation. Counsel, I want to sort of get to what I think the heart of my concern is. It seems to me, reading the decisions, that the department applied the IRS's tests for tax-exempt status, including the IRS's test, which would show private annealment, and the test that would show an unlawful purpose for the purposes of the tax code. But there is no corresponding statutory provision or regulatory provision that prohibits certain purposes. So that's the argument that GCU made in its opening brief that I don't really see addressed in the answering brief. So if you could hone in on that. What is your best argument that there is a statutory authority for applying the, I think what's sometimes called the private activities test or the private benefits test, which seems grounded in different statutory language? Right. So I think it's actually helpful to compare the text of the Higher Education Act and 501c3 of the Internal Revenue Code. I think for purposes of this case, the relevant standard is the same. And because the Department of Education recognized that the standard is effectively the same, even, you know, there might be some difference in the language, the Department of Education looked to the IRS's regulations, which construe 501c3. If you put the two definitions side by side, there's four elements to the definition of 501c3. It's the organized or operated exclusively, the no part for the benefit, no substantial part of the activities of propaganda, and no participation in political campaigns. And then you go to 1003.13, and it has to be owned or operated by one or more nonprofit corporations or associations, and then the no part of the net earnings shown in order to benefit. Right. So they take one of the clauses out of 501c3, the second one, and they don't incorporate the first one. And yet your whole decision is based on an interpretation of the first clause of 501c3, which was not carried over into this definition. I think that the Higher Education Act is meant to encapsulate Congress's understanding that the institutions of higher education will be operated for an educational purpose, Your Honor. What's your basis for that, that the HEA incorporates a purposes requirement, that they have to show that it's for the money that's being spent for the purpose of education, that that effectively – what's your textual basis for the HEA somehow incorporating the equivalent of a requirement that they be operated exclusively for a certain purpose? I think it's the premise of the Act itself. Apologies for being somewhat vague, but Congress enacted the Higher Education Act in order to permit the Department of Education to scrutinize exactly these kinds of arrangements. Well, that may be, but it's not incorporated into the definition of figuring out whether something is profit or nonprofit. And, of course, the HEA recognizes that you can have institutions that are in either category. So we come back to the whole analysis is its nonprofit status, and whether this operational test under the IRS provision, whether that aspect of the IRS's test needs to be thought of in figuring out whether an entity is nonprofit under the HEA. And so I'm still sort of lost. I get that the HEA applies to schools, right? That's what it applies to, and so there is a purpose folded into there, but it's not specific to the nonprofit versus profit status. So the operational test, I think, is encapsulated in Section 1003.13 when it says the institution is owned and operated by one or more nonprofit corporations or associations. So the operational test, similar to 501c3, is drawn from that or operated by language in the statute. But the review decision expressly says they're not going to rely on or review the owned or operated discussion in the first decision. So it seems to me that the Department backed away from that discussion. I don't think that's quite right, Your Honor, with apologies for my disagreement. But I think the Department's decision, specifically pages 904 to 907 of the record, specifically outline why the operational test in the Internal Revenue Code. I read that part in the original decision, but then in the review decision it comes near the end and it says because of the foregoing discussion, we don't see any need to revisit or review our decision about owned or operated by. I'm paraphrasing here, but essentially it seemed to me that the Department was saying we don't need to rely on that alternative finding because we've already found these other issues. I think the Department's decision on reconsideration was a result of looking at Grand Canyon University's amended Master Services Agreement, and they simply came to the sensible conclusion that there wasn't any meaningful change to the underlying arrangement, and so they were resting on their original legal conclusions. And there's no evidence in this record that those conclusions are not supported by substantial evidence. I'll reiterate that the services agreement here keeps the university as a captive client to a corporation. I want to keep going back to this issue. I don't understand your argument because you said that the 501c3 definition is incorporated into this statute based on the owned or operated by one or more nonprofit corporations. But if nonprofit, if just the use of the phrase nonprofit corporations meant 501c3, why would they then have one of the elements of the 501c3 test then recited specifically? It would be superfluous if that were true. I think the Department of Education, in implementing Section 1003, simply had a belt and suspenders approach such that, you know, one of the requirements is for the IRS to determine tax-exempt status. Another is for the Department of Education to independently confirm. Where does it say here that the nonprofit has to be tax-exempt? I'm sorry. Where in the statute does it say that, in the HEA? It says nonprofit. Where does it reference 501c3? Oh, I was referring to the Department's implementation of that statutory language. And, again, as I believe Judge Sung noted in my opposing counsel's argument, there's no challenge to the validity of the regulation here. All the regulation does is say you have to have a 501c3 determination from the IRS. The regulation doesn't help you at all because you've conceded, and the decision says that the other two elements are met. The state element is met. The IRS element is met. And we're down to the first element, which just repeats the words of the statute. So the regulation doesn't help you with your statutory argument in the posture of the case as it comes to us. I think the first subsection of the regulation provides or makes clear that the Department of Education will independently scrutinize an organization's status and how it's— This element just says, is owned and operated by one or more nonprofit corporations or associations, no part of the net earnings of which benefits any private shareholder individual, which is, you know, it's a slight shorthand of the statutory language, but otherwise mirrors the statutory language. And the other two elements are not at issue by either side. And so we're just down to what this statute means. So I still don't understand how you understand the definition in paragraph 13 of nonprofit to carry over the entirety and hand to the Department of Education the entirety of the definition of 501c3 so that you will be checking the IRS's homework. So the Department of Education did not check the IRS's homework, Your Honor. Certainly did. You took their test, and you applied it, and you then said that they reached the wrong conclusion because they didn't have the full record and didn't do the right analysis. That's what your decision says. No, Your Honor. It says that they expressed no opinion on the IRS's determination, and that's for good reason. Even though you're applying the exact same standards in the IRS test, you're saying we're applying the same standards, we're going to look to their regulations, we're going to look to their decisions, we're applying it, and here's our answer, which is the opposite of theirs, but we're not saying they're wrong. Because I think there's a key difference between what the Department of Education is doing and what the IRS is doing. As the IRS has stated publicly, their initial review of whether an organization satisfies 501c3 is simply self-representational, and they take without question those representations. And subsequently, the IRS might conduct some kind of an audit to confirm that an entity satisfies the 501c3 test, but the Department of Education is essentially doing that audit on the front end. Based on what authority? I mean, isn't that the IRS's job? That's under the IRS code to do that audit if it needs to be done, not for the Department of Education to do that. And so it seems to me as a matter of sort of good government that we've got two different departments of the government, apparently, as Judge Collins pointed out, answering the same question but coming to different answers, and we can have that state of affairs if the IRS never does the further audit? That's simply how the IRS has chosen to conduct its operations. But Congress, in 20 U.S.C. 1099c, made clear under a change in ownership or a change in control that the Department of Education needs to conduct exactly this kind of review. Under your theory, if I understand it correctly, you could also revisit the Arizona law standards because that's one of the elements in the regulations. It's a nonprofit. You even said in your brief nonprofit is a concept of state law. And if you get to do the IRS's standard, I guess you're saying you could also do the Arizona law standard, and Congress assigned you that task too. I don't think that the agency's taken that position in this case, Your Honor. What would be the basis for making a distinction between whether you have the authority to do one or the other? If you have the authority to do one, I mean, I agree with Judge Collins on that point. If you have the authority to do one, you must have the authority to do both. Because as the decision makes clear, the Department of Education is not second-guessing Grand Canyon University's tax-exempt status. Maybe not in this case. But again, we're sort of looking at the law and trying to figure out how this statute works for all cases. And logically, I don't follow the distinction you're trying to draw there. I do want to reiterate that the Department of Education made clear that it was not second-guessing the IRS's determination. And it's also worth noting that that determination by the IRS was made in 2015 before all of the documents had been finally executed and finalized. And the Department of Education was carefully scrutinizing the nature of that agreement, under which most of the university's revenue are flowing to a corporation rather than to benefiting students. And so the department reasonably concluded that this would continue to be a proprietary institution of higher education. Counsel, if your argument was limited to the department has authority to interpret and apply the definition in Section 1003, Print 13, and that it can make its own investigation of whether an entity is getting net earnings to the private endearment in violation of the non-profit definition in the HEA, even if the IRS found there was no private endearment for purposes of the tax code, that the department could determine whether they're being owned or operated by a non-profit for purposes of the HEA, regardless of what the IRS found for purposes of the tax code, I'd be more persuaded that the department has the independent authority to make its own determination and effect case-by-case basis. What I have trouble with is the clause of 501c3 that essentially imposes a different statutory requirement that we can't find in the HEA, which is that for the purpose of the tax code to be tax exempt, the entity also has to be operated exclusively for certain purposes. That text or an equivalent is not in the HEA. And what I have trouble with is you saying the department can also essentially make its own determination about whether an entity is serving a lawful purpose when I don't see that requirement in the HEA, and that's where I see the department is essentially acting like the IRS and applying the tax code divorced from the statutory authority it has in the HEA. Does that make sense? I think so, Your Honors. So it might be helpful to point to the final language of 1003.13, which specifies that net earnings do not inure to the benefit of any private shareholder or individual. And I think what's meant by that language is that by resources of an educational institution flowing to a private shareholder or individual would not be for educational purposes. I feel like that is almost identical languages in the tax codes clause about private inurement. And while I think there could be an argument that the department is entitled to interpret private inurement differently from the IRS, I didn't see that argument either in the decision or the briefing. What I see is the department saying we're relying on the IRS's interpretation and application of their private inurement clause and the other clauses in the IRS, which then don't actually exist in the HEA. So if this was the case where the department said, you know what, we looked at the IRS's interpretation and application of private inurement and we just disagree with how they do that in the context of the HEA, we think we should interpret private inurement differently, or this language about may lawfully inure means something else, this would be a different case. But I don't see any of that reasoning in either of the decisions or your briefing. So I think that one of the premises of the IRS regulations in the organizational and operational tests is that the organization that's being scrutinized is actually being operated for a nonprofit purpose. And with the Department of Education, that question of a nonprofit purpose is whether the organization is being operated for students, essentially, for an educational purpose. And I think that is an understanding that flows throughout the Higher Education Act and is, in fact, why Congress afforded the agency authority to scrutinize exactly these kinds of transactions, to ensure that a university's resources are flowing to benefit students and the university's educational mission itself, not to private shareholders and a for-profit corporation. And part of the trouble here is that we're bound to review the decisions as they're written. So can you point me to anything in the decisions that say, you know, we're examining the purposes for which this money is being spent based on our interpretation of the HEA as limiting the purposes that, you know, I mean, that that's the basis for the application of the private activities test? Absolutely. I think pages 904 to 907 of the agency's reasoning make this clear. When they consider the impact of the Master Services Agreement, the nature under which most of the university's executive leadership are, in fact, employees of the corporation, the CEO of the corporation and the plaintiff's president are the same person, so that they are looking through, effectively, all of these arrangements. I understand why they found a violation of the private activities test. I'm not trying to second-guess that at this moment. What I'm trying to understand is the statutory basis for applying that test to begin with. And there, I think, pages 903 to 904 of the agency, of the record, specifies why the Department of Education is looking to the IRS's regulations in this respect, because there is relatively little regulatory interpretation of the relevant. But what 903 says is that it distinguishes between private benefit and private enormoument. It acknowledges that private enormoument involves insiders. It says that private benefit is different and goes beyond that. And then the whole weight of this rests on the private benefit and not private enormoument. And so that's the problem, is what's in the statute is private enormoument. They don't have the private benefit. The language that the IRS bases private benefit on wasn't copied into the statute. So I think, actually, that the private benefit and the private enormoument test, as the Department's decision reflects, overlap in many respects. And that's why, as I said— Correct. I mean, if you have private enormoument to insiders, it's probably not going to be a private benefit. But your own decision— Or it probably is a private benefit. Close to language says it doesn't work in reverse. If you look at sort of the concentric circles— You will frequently have violations of private benefit that aren't private enormoument violations. Right, right. They're not exactly concentric circles, but there is significant overlap between a private enormoument and private benefit. And there is private benefit that is not private enormoument. That's all sort of beside the point. The origin of those private benefit and private enormoument analyses comes from different language in the statute. Do you agree with that? No, Your Honor. And that's why I said at the outset that, for all relevant purposes here, the language of the IRS statute and of the Higher Education Act are effectively the same. And the Department of Education— But I'm saying within the IRS provision, within 501c3, do you agree that the private benefit and the private enormoument analyses come from different statutory language within 501c3? I don't think so, Your Honor. The IRS is looking at a broader inquiry because there are other kinds of nonprofit purposes that an entity could be eligible for tax-exempt status under the Internal Revenue Code, namely public safety, literary, or fostering amateur sports. And the Department of Education is looking exclusively to educational purposes. And so that is where the more general-purpose inquiry in 501c3 does not apply to the Higher Education Act. But the substantive standard in the two statutes is essentially the same. And the Department of Education has confirmed as much in subsequent rulemaking where they've clarified the definitions under Section 600.2 in the Code of Federal Regulations. They've since made clear that the kinds of ownership operations, such as those at issue here, would very likely not be nonprofit institutions of higher education. And the Department of Education clarifies its reasoning that the substantive standard of the Internal Revenue Code and the substantive standard under the Higher Education Act are essentially looking at the same thing. And that's why the Department of Education looks to regulations construing the Internal Revenue Code because there's a larger corpus of law defining the relevant standards. And that's exactly what they did here. I just want to make sure I understand your argument. Is that the HEA effectively or impliedly requires an entity that's going to benefit from any of the funding that's at issue in this case? I think whether for-profit or nonprofit has to be operated exclusively for an educational purpose? Yes. That's how the department interprets the code as a whole, that it impliedly imposes a requirement that the entity be operated exclusively for educational purposes. I think that's right, Your Honor. And this court's decision in church by mail— Okay, saying that that's how— Do you have any authority, regulatory, case-wise, saying that that's a reasonable interpretation of the HEA or where the department has actually said that's our interpretation of the HEA? So the subsequent rulemaking that I was adverting to earlier says this specifically. That is, of course, not at issue here because it was subsequently issued in 2022. And I'm happy to provide the court with that citation if you would find it helpful. But the Department of Education in this decision explained why it was incorporating standards from the Internal Revenue Code and the IRS's construction of those because there's relatively little authority construing the Higher Education Act and those implementing regulations. And so because the standards are essentially the same, as I explained to Judge Forrest, the agency was explaining why it was drawing from these other sources of authority, which is very similar to other bodies of law. When you have a similar standard applicable to various different doctrines, you're going to look to different doctrines to incorporate the relevant legal analysis. And that's what the Department of Education did here. Let me ask you one question, which we asked your opponent, which is if we concluded that enormous was the key standard here, did you concede or did the department concede that enormous was not met here or would we need to remand back to the agency to apply the enormous test? So I don't think there was a specific finding on private enormous, but because the agency's decision explains why the private benefit and private enormous tests overlap. And so I think that the best rating of the agency's decision is that there's some finding as to both. If the court disagrees in that respect, then I think the appropriate procedure would be to remand if you believe that the agency needs to make a concrete conclusion as to private enormous. But I think the relevant regulation actually doesn't include any enormous language. It's simply explaining that net earnings which benefit the private shareholder or individual. Oh, but you don't get to change the statute. I mean, the statute says enormous. And so saying that, well, we put in the regulation benefit and took out enormous, no, you don't get to do that. I understand, Your Honor, and I don't suggest as much. I think rather that the longstanding interpretation of both 501C3 in the Internal Revenue Code and the similar language in the Higher Education Act is that that language about where it refers to enormous specifically is understood more broadly to consider both the private benefit and the private enormous test. And the IRS regulations reflect as much, including the same enormous language in 501C3 of the Revenue Code. Okay. All right. Thank you, counsel. We've taken you over, and we appreciate your argument, and we'll hear rebuttal now from Mr. Gumbis. Thank you, Your Honor. I'll be brief. With respect to the question about the record, I think looking at 5ER 902 to 904, the Department's decision specifically talks about private benefit and disregards private enormous. There's no finding of fact in its decision that an insider was paid in. There's no stipulation on those pages. You're right. That was overstated. Yeah, it was. And I said, Your Honor, that it was basically the absence of the argument in response clarifying question, and I apologize for making the argument a little too broad. But I would say this. We addressed that argument in our opening brief at pages 31 to 33. In DOJ's brief, you can zero in on this on page 33. There's no reservation that private enormous was considered or wasn't considered as a basis for the Department to find it. We argued in this case affirmatively at the district court and before this court that there's no insider being paid net profit. And no one has said we can show that. What you heard from my adversary was basically an amalgamation of the two tests and a rereading of the HEA's provision, which authorizes only private enormous. With regard to captive client, and I mention this because the consequences of what my adversary is arguing, this implied or this right to analyze private benefit could be very significant. There's hundreds of institutions that have entered into this very type of transaction. We dealt with that. Our brief identifies some of the terms that are far more favorable, frankly, to the service provider than what GCE is getting in this case. And I think one of the points that's lost here, everything that GCE does for GCU benefits students at GCU. And there is no basis on this record to say that GCE is controlling GCU. The government would have you believe that by arguing about revenue analysis and the like, which we've shown is an error, quite frankly, and wasn't adequately explained to satisfy the APA's standard of arbitrary and capricious in accordance with law. But giving the Department that right could create substantial problems here. Do they tell USC you're violating the IRS's private benefit statute because you have a contract with a service provider to provide similar service to what GCE provides GCU? They haven't yet, but they could. The other thing that has been ignored by the Department is that Congress specifically said in 20 U.S.C. 1232a, you are not allowed to interfere with the university's personnel decisions and administration decisions of the college. That's why Congress didn't adopt the private benefit test, and that's why the IRS and its expertise body of law controls for purposes of that. And the court should be comfortable that GCU today is subject to IRS oversight. If there's a problem, they would tell us. I will also mention I had one other case with the Department on this very issue. It's referenced in the pleadings. In that case, with regard to the record, we learned that the Department wrote to the IRS. I don't know if they did in this case because the Department refused to tell us if all internal documents are part of this record. What they said is we don't have to give you internal documents. We designate what's important, and they don't say that all of those documents are deliberative. Indeed, as you know from the briefing, the document email we got from FOIA, which indicated the Department's team had decided this issue long before our deadline to close, which was July 1, and it's important I put that in some context. I argued earlier that my client was transparent. I see I'm over. Can I have a brief moment to conclude? Thank you very much. My client was transparent. We asked for preacquisition review in January of that year. Telling them the closing was July 1. The regulation says they're to give us preacquisition review if it's requested. It was not given. The directional guidance from their subregulatory guidance is that you do that 45 days before the transaction. We did about five times that much. Counsel at that time wrote to the Department, and they were told nothing about what was going on, not even directionally. Hey, we have a problem with this. President Mueller's due role, that's something referenced in there, and they've taken kind of contrary positions on it, but just narrowly. Their decision is prohibited to the extent they relied on that by 1232A, but they could have said to Grand Canyon during that five months, we have concerns about that. The Department of Education only applied the IRS private benefit test, and they didn't have authority to do it. For that reason, we think the decision should be reversed, vacated. Thank you. All right. Thank you, counsel. The case just argued will be submitted, and the court will stand in recess. All rise. This court, for this session, stands adjourned.
judges: COLLINS, FORREST, SUNG